**Marina E. LEEPER, et al., Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 86–K–1610.**

United States District Court, D. Colorado.

July 17, 1987.

Sonja Warberg, Warberg & Assoc., Fort Collins, Colo., for plaintiffs.

Robert Zupkus, Frederick Klann, White & Steele, Denver, Colo., Robert A. Zupkus, Zupklas & Ayd, P.C., Englewood, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

On October 9, 1983 plaintiff Marina Leeper and her minor daughter, Monica, were involved in an automobile accident. They subsequently received medical treatment allegedly covered by their "no fault" insurance policy with Allstate. On June 30, 1986 plaintiffs filed this action to recover compensatory and exemplary damages for defendant's "failure and refusal to pay reasonable and necessary personal injury protection benefits."

Plaintiffs contend Allstate requested and received independent medical, chiropractic, and psychiatric examinations, by physicians of Allstate's choosing, which substantiated the need for the treatment in question. Plaintiffs maintain Allstate nevertheless "failed and refused" to pay for the costs associated with that care.

Plaintiffs posit four claims against Allstate: breach of contract, bad faith, outrageous conduct, and punitive damages. Allstate responds by asserting various defenses and denials, and now moves for partial summary judgment for the dismissal of all but the breach of contract claim. This motion is denied.

Both sides agree that plaintiff states a cause of action for breach of contract under C.R.S. 10–4–708, "Prompt Payment of Direct Benefits," which provides:

> In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same.

A defendant ordered to pay any overdue benefits in such a contract action is also liable for interest due on the benefits, at a rate of 18% per annum, and for the reasonable attorney fees incurred by the complainant. The section concludes:

> In addition, in the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the other party, in addition to the other amounts due to the party under this subsection (1), an amount which is three times the amount of unpaid benefits in controversy in the action.

■ The issue presented by defendant's motion for partial summary judgment is whether a plaintiff who brings a contract claim under the No–Fault Act section cited above is restricted to the statutory remedies provided therein, as defendant argues, or whether common law tort claims may also be maintained.

In arguing that plaintiffs' tort claims have been "preempted" by the statute, defendant actually asserts two analytically distinct legal principles: that of implying a private civil action for a statute that provides solely for criminal or non-private civil

remedies, and that of express statutory preclusion of otherwise available, non-statutory remedies. The former, which provides the general rule that courts will not imply a right of action or otherwise imply new remedies where a statute creates legal duties and provides a particular scheme for enforcement thereof,[1] is inapposite. The cases cited by defendant do not support the contention that the existence of statutory remedies preempts alternative remedies existing at common law. Rather, those cases apply to the contrary situation where a statute is passed that *creates legal duties unknown to common law* and contains remedial provisions for enforcing those new duties that do not include the action brought by plaintiff. In such cases, the plaintiffs' claims are dismissed because there is no legal basis for them, as they derive from neither the statute nor the common law.[2]

A Colorado case applying this rule in the insurance context is *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App.1982), aff'd 691 P.2d 1138 (Colo.1984) (en banc). There, the court dismissed an "unfair insurance practice" claim based on an insurer's alleged violation of the Colorado Unfair Competition and Deceptive Practices Act, C.R.S. § 10–3–1104(1)(h). That statute creates a new legal claim unknown at common law and provides for regulation and enforcement by the Insurance Commissioner. Since the statute did not expressly provide for or authorize a private civil remedy, and there was no common law basis for such an action, the necessary inquiry for the court was whether there was impliedly created "a private right of action for violation of the statute."

The plaintiff here seeks to pursue a private civil action for breach of contract. This is expressly provided for by the statute. In addition, she seeks recovery under common law tort theories which are recognized by the Colorado courts. There is no question of implying a right of action, as the claims are clearly based on existing law.

The *Trimble* case itself expressly recognizes that the specific statutory remedies do not preempt common law remedies. Although the court dismissed the claims improperly based on violation of the statute, it allowed the insured's additional tort claims based on negligence, bad faith breach of insurance contract, willful breach of contract, and outrageous conduct. Under the theory espoused by defendant here, these claims would also have been dismissed as preempted by the statutory remedy.[3]

The possibility, however, of statutory preclusion of any alternative remedy is not excluded. Colorado courts have disallowed non-statutory remedies where the relevant statutory language "articulates a legislative decision to establish exclusive as well as comprehensive remedies for injuries that are covered by the Act." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1264 (Colo. 1985). Thus, contrary to defendant's assertions, preclusion is not implied from statutory silence; rather, a statute is preclusive where it expresses the intent to preclude.

In *Savio*, the following statutory language was held to preclude expressly common law remedies:

> ... all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of [injuries covered by the statutory provision] *are abol-*

---

1. *See generally, Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Rawson v. Sears, Roebuck & Co.*, 822 F.2d 908 (10th Cir.1987).

2. The cases cited by defendant from other jurisdictions fall into this category, because those jurisdictions have not adopted the common law tort remedy of bad faith breach of contract; thus, plaintiffs claims were denied because they were not based on the applicable statutes or existing law. *E.g., Kubiak v. Allstate Ins. Co.*, 198 N.J.Super. 115, 486 A.2d 879 (1984).

3. Similarly, the Tenth Circuit recently refused to imply a private right of action where a statute provided only for criminal penalties. The majority noted that plaintiff had not appealed the dismissal of his common law claims, implicitly recognizing that those claims were not "preempted" simply because the private remedy could not be implied. *Rawson, supra* note 1, at 910, n. 1.

*ished except as provided* ... C.R.S. § 8–42–102 (emphasis added).

An acceptance [of the statutory remedies] *shall act as a surrender* by the employer, his insurance carrier, and the employee of their rights to any method, form, or amount of compensation or determination thereof or to any cause of action, action at law, suit in equity, or statutory or common-law right, remedy, or proceeding for or on account of such personal injury or death of such employee other than as provided in [specified articles ... C.R.S. § 8–43–104 (emphasis added).

The Supreme Court of the United States has recently relied upon similar express language to preclude otherwise available common law remedies. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Court held that ERISA preempts common law claims based on improper processing of claims, finding congressional intent to preclude in the language of the statute: "... the provisions of this subchapter and Subchapter III of this chapter shall supersede any and all State laws ..." 481 U.S. at 43, 107 S.Ct. at 1551.

The relevant section of the Colorado No-Fault statute contains no such express limitation of common law remedies. Nor does analysis of the statute as a whole indicate a basis for implying legislative intent to preclude alternative remedies. Indeed, it would be difficult to infer preclusion from legislative silence where, as here, other sections of the same statute contain express preclusion language.[4] These sections would be unnecessary if, as defendant argues, the no-fault statute as a whole, creat-

ing a comprehensive scheme for recovery, implicitly precludes all other remedies. It has long been recognized in Colorado that statutes must, where possible, be interpreted so as not to render any clause or provision unnecessary, contradictory, or insignificant. *See Nevada Power Co. v. Watt,* 711 F.2d 913, 920 (1983) and cases cited therein.

In addition, the inclusion in one part of a legislative scheme of that which is excluded in another part implies that the exclusion was not inadvertent.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 78 L.Ed.2d 17, 104 S.Ct. 296 (1983), *quoting United States v. Wong Kim Bo,* 472 F.2d 720, 722 (CA5 1972).

Had the general assembly intended to preclude all tort recoveries that could arise under § 10–4–708, it presumably would have done so expressly, as it did in the subsequent provisions.[5]

Even if § 10–4–708 precludes tort recovery, only injuries compensable under that section would be precluded. Under *Savio,* plaintiff's tort claim for bad faith breach of contract was allowed because the court found that claim to be separate and distinct from the physical injuries suffered, which were compensable under the statute. The court rejected defendant's contention that any injuries caused by the bad faith breach arose out of the original physical injury, and were thereby compensable under the statute along with the physical injuries. The court emphasized this distinction:

**4.** Section 10–4–714, Limitations on Tort Actions, provides that *no person entitled to PIP benefits under the Act shall be allowed to recover for physical injuries caused by a motor vehicle accident, except in certain circumstances (death, dismemberment, permanent disability or disfigurement, etc.).* Section 10–4–715 provides that there is no limitation on tort actions against non-complying tortfeasors.

**5.** Defendant notes the tort of bad faith breach of contract was *not recognized in Colorado when* the no-fault act was passed. This supports the

contention that the legislature could not have intended to preclude it. Colorado courts have avoided the abrogation of common law remedies, absent a clear congressional intent. "The rule is that a remedy provided by one statute does not abolish that given by another, or by common law, unless specifically so provided." *Collard v. Hohnstein,* 64 Colo. 478, 174 P. 596 (1918) (citations omitted). In any event, the question is whether the injuries compensable under the Act are substantially the same as those alleged in tort. See discussion at p. 1347, *infra.*

The duty of an insurer under the Act to provide benefits and compensation is factually distinct from its duty to deal in good faith with claimants, even though such duties necessarily involve a common underlying physical injury. The right to compensation depends on the resolution of specific factual and legal issues between carriers and claimants. Whether in a particular case disputes involving those issues are entertained in good faith presents a related, but quite different, question, the resolution of which does not depend on the validity of the underlying compensation claim. *Savio*, 706 P.2d at 1270.

The Supreme Court of Colorado also emphasized this distinction in holding that the execution of a general release by an automobile accident victim in favor of a tortfeasor did not bar the victim's recovery of benefits from the insurer under the No–Fault Act, "[b]ecause PIP [Personal Injury Protection] benefits are distinct in both purpose and effect from tort claims." *Cingoranelli v. St. Paul Fire & Marine Insurance Co.*, 658 P.2d 863 (Colo.1983).

Similarly, the tort claims of the plaintiffs here are separate and distinct from their claims for PIP benefits under the No–Fault Act, and from their claim under the Act for breach of contract. If plaintiffs prevail on the contract claim, they will be entitled to payment for all benefits due to them under the contract, which are limited to the actual injuries caused by the automobile accident. They would remain uncompensated for the alleged damages arising from the bad faith handling of their claim.

It is true that, under the statute, plaintiffs could recover three times the amount due as PIP benefits if the insurer's conduct is determined to have been willful and wanton. But the level of misconduct necessary for recovery within the rubrics of bad faith

or outrageous conduct does not rise to the level of egregiousness to justify equating them with the "willful and wanton" standard. In *Trimble*, the standard for bad faith breach of contract was defined as one of reasonableness under the circumstances.

> The relevant inquiry is whether the facts pleaded show the absence of any reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances. 691 P.2d 1138, 1140.

■ This simply does not amount to willful and wanton misconduct.[6] I express no judgment as to the merits of plaintiffs' tort claims; rather, viewing all of the facts alleged in the light most favorable to the plaintiffs, as to whose claims summary judgment is sought, I conclude only that plaintiffs have raised legally cognizable claims. Applying Colorado law, I hold the statutory remedies under C.R.S. § 10–4–708 do not preclude common law tort claims for bad faith and outrageous conduct. Punitive damages based on the tort claims also remain available, as they are distinct from the treble damages imposed by the statute.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment is denied.

---

**6.** The Colorado legislature recently codified the bad faith tort action, providing that "the insurer owes its insured the duty of good faith and fair dealing, which duty is breached if the insurer delays or denies payment without a reasonable basis for its delay or denial." Senate Bill No. 67, an amendment to Part II of Article 3 of title 10, Colo.Rev.Stat. Although the legislation is not dispositive here, because it is effective only as to causes of action arising after July 1, 1987, it is noteworthy that the level of misconduct amounting to bad faith breach is "whether the insurer knew that its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable."